21-454 United States of America v. Dzionara-Norsen And we have Attorney Harrington. I understand you would like to reserve one minute for rebuttal. Is that right? Yes, your Honor. I expect we will not be belaboring this case nearly as long for either of you as we did for the previous one. I apologize for making you wait. I feel like I learned some lessons on an area of law I have no idea about. Kind of like a little CLE class for me. Good morning, your Honors. May it please the Court. My name is Jillian Harrington and I was assigned by this court to represent defendant appellant on this appeal of his conviction. I did not represent him in the district court below. As this court is of course aware, we raised five substantive issues for review by this court. And my client raised several additional issues in his pro se brief and reply. I would like to begin today by addressing the first issue that we raised, which is the sufficiency of the evidence on the three charges that were brought by the government in this case. Mr. Zionara Norson was convicted of three counts in this case. Knowingly distributing child pornography, receiving or attempting to receive child pornography, and knowingly possessing or attempting to possess child pornography with the intent to view that child pornography. And this conviction is based in large part on these file titles that were found on his computer. And that's all they were, were file titles. There were no images or videos attached to those files. And admittedly these files had some, I don't know how to describe it, unsavory language in their titles. But again, there was nothing attached to those titles. And if we don't have the images and videos that were attached to those file titles, how can we be certain what was in it? What do you do with your client's admissions during the interviews, assuming that they were properly admitted? Because didn't he admit that he would regularly and extensively download and view child pornography? Well, I believe, Your Honor, that it's difficult to separate the two issues because we made a very strong argument. It's actually, all of these issues actually are very interwoven. Well, sure, but if you succeed in reversing the suppression ruling, then we've got one kind of case. But if you're just now saying the evidence as it came in was insufficient, the admissions were received in evidence. And I think the law is clear that even if the evidence was inadmissible, then you get a reversal for that, but you get a new trial, which may or may not – maybe the government has other evidence they didn't bother using because they have good confessions. We don't know what the record would be. So you don't get – you don't prevail on the sufficiency argument unless you can challenge the sufficiency of the evidence that was received. And so isn't it the case that the case is based primarily on the admissions and the various file titles and so on are essentially corroborative of that? If you only had those, it might be a very different case of sufficiency, but that's not what the record is. Absolutely, Your Honor, and that's why I say that this is all so interwoven. We also end up with the ineffective assistance of counsel issue that's interwoven because he wasn't able to get any testimony in front of the jury to explain any of this, to explain why- But I think what we're asking you is to unweave them for the moment because you have brought a series of distinctive claims. If what you're saying is you would rather spend your time arguing that the statement should not have been admitted, you can pivot to that and discuss that instead. And we understand if you were successful, that might have consequences. Right. And if you'd rather do that, that's fine, but if you're going to stay on sufficiency, I think- That's fine. The question before you is based on the evidence that did come in, if you want to talk about the insufficiency of that evidence or do you want to pivot? Either way. Right. Yeah, I think then we should pivot because it's impossible – I shouldn't say impossible. It's very difficult to- It's an uphill battle. It's an uphill battle. I'll take that one, Your Honor. If we pivot to the statements, again, that is also connected to the issue regarding not getting the experts in. But going with the statements, we have a situation where these two FBI agents show up unannounced at the home of this young man, very fragile young man. He suffers with autism spectrum disorder, anxiety, depression, suicidal ideation, and the agents knew this. They knew that he had recently been subject to a mental health arrest, which I believe is how this all came about, how the government learned some of this information. And they come there and they ask him to come outside. They stand on either side of him with his back to the door, and they make him feel like they're there to help him, like they are there. They made it pretty clear to him he wasn't the target of their investigation, talked to him about getting counseling, talked to him about – they even advised him to lie to his therapist and not tell his therapist that he was allegedly viewing child pornography. So they used – basically they used his vulnerabilities against him, and they convinced him to speak with them. They convinced him to consent to the search of his laptop computer. Without those statements, this is, as Your Honor acknowledges, a very different, very different trial. Without those statements, we have some file titles. Without the – it sounds like what you're really saying is you don't have even that because the consent to the search of the computer –  I mean, there are different arguments, right? I mean, if the argument is Miranda warnings should have been given, well, you don't have to give a warning about consent to search in the same way you do about making statements, so it splits off. But if you're saying it's basically involuntary, then I don't see much of a reason why consenting to the laptop search would come out differently than consenting to make the statements that he makes. Absolutely, Your Honor. And we raised those together. Again, those do go together. They all came out of the same event, standing on his doorstep. I was assuming – I guess I was taking it to the next level, thinking maybe the government would have gotten a search warrant without that and they would have ended up with the computer. Fair enough. But you're making the argument that all of this is involuntary. Absolutely. That these government agents came to his home and they lured him into this false sense that they were there to help him. And then through that, they even got him to give over his password. They got him to come in the next day. All under the auspice that they were trying to help him and that they were trying to clear him, that they were trying to make sure – I think they used the term – make sure that he wasn't somebody they needed to worry about. And they made him think that it was all going to be okay. And so I guess the question is – and I guess your answer could be both – but is this an argument that those tactics are prohibited? Or is this an argument that in his case in particular, this was not a voluntary consent because of something about his particular mental state? Absolutely. I mean, I think it would be – B would be the answer because as we know, of course, the Supreme Court and this court and every court in this state has held, the agents, law enforcement officers, can lie to people that they are interviewing, whether they're suspects or targets. It depends on what the lie is, of course. If the lie is you have immunity from prosecution, that's a different story. Of course. Of course there have to be limits. But in general, they can be disingenuous. They can use some trickery. We all know that. The problem is we have to take the interviewee as we find him. And this particular person is a vulnerable person. But once you say that, though, then I take your point about everything being interwoven because the actual record of the suppression hearing, I think – am I not correct that the only evidence of his fragility, et cetera, is that he had recently – the cops had responded to his mother's house on the theory that he was an emotionally disturbed person and he went to the hospital. And then he got out. Well, it does come out during the hearing that the agents were aware of that and that he was suffering with these other issues that he was on prescription medication. But the specific diagnosis and what effect those diagnoses would have on a person that might make that person vulnerable, I think none of that is actually in the suppression hearing record. Not the vulnerability and the extent to which he would be more vulnerable than your average citizen, again, because of the fact that the defense was not permitted to bring in these experts that they had noticed. Wait, wait, wait. We're sort of – we've got a timeline here. At the time of the suppression hearing, there was no ruling by the court you can't have an expert, right? That comes later. Yes. There's an effort to bring in an expert at trial and then there's a separate lawyer who comes in and with a different possible expert makes an argument that I'd like to reopen the suppression hearing. Yes, absolutely. And part of that was because – And that was an expert who had a high school diploma. Yes, but who also had been a speaker at FBI events and classes. Yeah, I don't know if that makes you an expert. But I get the – so all of this then brings up the question of the adequacy of counsel. Yes. I guess what I wanted to ask you there is isn't that something that has to be brought up with information outside the record? Because, frankly, when I look at the rulings on the experts that were proffered, I'm not inclined to find much fault with the district court in saying you haven't made the appropriate showings, you haven't got somebody who's got something terribly relevant to say. And we don't know, it seems to me, if those were correct rulings on the record that there was. It's a little hard to say the lawyer was ineffective because we don't know whether the lawyer had consulted every autism expert in the country and these were the best people that the lawyer could come up with. The question is how extensive an investigation was done into this issue. What did you learn from various experts that you consulted? Is the problem that even these experts had wonderful things to say and wonderful credentials and you just blew it in how you presented it as opposed to this is the best you can do in this case? No, and I appreciate that concern and I even noted that, I believe, in a footnote that this may very well be an issue that is better handled in a 2255. I raise it in abundance of caution. I'm always concerned that if I don't, then the government comes back at the 2255 and does that. Of course, I get it. I'm not, it is not any kind of, anything like a criticism. Of course. I'm just trying to figure out what we can do with the various issues that you're raising. Right. No, and I absolutely understand that. Okay, and I think we have your argument. So, thank you very much. We'll hear from you in a minute. You've reserved one minute. Thank you, Your Honor. Why don't we hear from the government, Attorney A. Rossi. Thank you. Good morning. Kyle Rossi, Assistant United States Attorney from the Western District of New York, and I was the prosecutor that conducted the trial of this matter and was the prosecutor that, in fact, charged it from the beginning. I have distilled for the court today what I believe are the three core issues in the appellant's appeal. Sufficiency of the evidence, preclusion of the defendant's so-called experts, and the refusal of the district court to suppress the defendant's statements and his consent to search his computer. I'll start with sufficiency because I think that's where the court spent most of its time with my colleague. When viewed in the light most favorable to the government, the evidence was more than sufficient to support the defendant's conviction for the three-count indictment in this case. There was a distribution or a download of child pornography that was distributed directly from the defendant's computer from the defendant's address where he lived. That video, which was shown to the jury and which was commented on by the government's expert witness, a pediatrician, was more than sufficient to establish the first count, the elements of the first count distribution of child pornography. The download led police directly to the defendant's address. In the day that they visited him, June 13th, and then the following day, June 14th, he gave very clear confessions as to his involvement in these crimes. He admitted that he received child pornography. He had done so for years, that he had possessed it, that he had accessed it, that he had viewed it, that he knew he was distributing it by using peer-to-peer software. Importantly, he told law enforcement that he deleted, after he used his images for his purposes, he deleted the images. He was careful to do that, including that he would delete them from the computer, but then also empty his trash bin. The forensic evidence clearly corroborated those statements and showed exactly what the defendant said it would show. There were particles of indications and evidence of child pornography on his computer, and these took the form of unambiguous, unambiguous file titles. They included file titles of videos, deleted videos that said the video was illegal child rape. One had the notation kiddie porn and preteen hardcore directly in the title. Some of the titles were for videos of known child pornography for known victims who have been identified to the FBI and the National Center for Missing and Exploited Children as known children. Counsel, just because there's limited time, I understand that the evidence here on sufficiency, you've laid it out pretty clearly here, assuming there was no suppression or anything. Would you mind turning to the ineffective assistance claim and offering us your thoughts on whether it would be appropriate for us to reach this, the merits of the ineffective assistance issue here, or whether it ought to be raised in 2255? Understanding that we probably have discretion, certainly, to kick it to 2255, but what's your view as to what we should do and why? I believe, as we stated in our brief, that it should be raised at the district court level, your honor. And the reason is, there is a significant amount of evidence that may lie outside of the record of what was presented on the appeal of this case that could be unearthed at the district court level. The intricacies of representation and relationship between a defense attorney and his client, although this record is robust, there is evidence that could be unearthed at the district court level. And the district court, as this court has held, is in the best position to make that decision. So you don't think that it's right for our decision now, then? I don't believe so. It would be a short answer. Short answer, I don't believe so, Judge, although the court, as you mentioned, you certainly have discretion to consider it. Well, I think you do suggest that in the brief that if we did reach it, we should decide it against the defendant. But it does seem to me that, as I was discussing with Ms. And we just don't know what those lawyers did or didn't do in an effort to present expert witnesses. As you've pointed out in your brief, maybe one of the issues with how come there wasn't a better expert, or how come there wasn't a good record on the expert presented, has to do with things that the defendant or his mother may have caused by resisting this kind of defense. But all of that really is outside the record as well. So both sides, if this goes to a 20 to 55, will have the opportunity to make a much better case as to what really happened that led to the exclusion of the expert testimony. That's the argument for putting it over. Yes, Your Honor. With respect to, there was some time. Are you going to follow up on that or were you about to? Before you go off that point, I have a question, but let me know if you were going to stick with that point. I agree that the best place for the ineffective claim is with the district court, Your Honor. Where I was going to go with that is, a lot of those loose ends or open questions that we have aired just now with respect to ineffective assistance would seem to go to the first strickling prong of performance, right? What did the lawyer do and why, which would then, presumably, be used to determine whether the performance was reasonable or fell below the standards that we expect of an attorney. But my question is, is there enough in this record for us to determine prejudice? Meaning regardless of whether his performance was reasonably, their performances, I suppose if you look at both counsel, were deficient or not. Is there any showing that has been made thus far suggesting that there's anything different the lawyers could have done that would have made a difference? In other words, that could have led to either acquittal by getting expert testimony admitted. Or presenting it to the district court such that there's a reasonable probability it would have been admitted. And if admitted, there's a reasonable probability of an acquittal, or at least a different outcome, which I suppose is the acquittal. Or is there a reasonable probability that there's some evidence could have been admitted or presented to the court at the time of the suppression hearing that could, that reasonably likely would have changed the outcome of the suppression hearing, which then would have had a flow through to the trial. All of those go to prejudice, meaning, is there something here that could have been done differently, regardless of whether the lawyer should have done it? Is there anything that could have been done? And is that the sort of thing that we have an adequate record about now? Or is that, again, the sort of thing that really needs to be developed, that the defendant should have a right to have a lawyer in a 2255 proceeding say, well, I'll tell you what. There's this expert out there that everybody knows about who works at the university, so and so, who really could have given devastating testimony, absolutely would have gotten this stuff suppressed. Or is sort of that all passed now, in your view? Your Honor, I believe that the record is full and sufficient with respect to prejudice and that there was none. And the court could not- My point is, is there any chance, or should we be giving him the opportunity to tell us, with a new lawyer, hey, look, let me tell you about this expert nobody's ever talked about before. He's not on the record, and he's got fantastic expert testimony that could change the world. Why is it that he should not have the opportunity to do that in 2255? And maybe he shouldn't, but I'm asking to give me why that opportunity should not be given. Or maybe that opportunity was given to him already with a new lawyer, and it's passed. But you tell me. I believe, Judge, if the court remands this matter to the district court for the ineffective argument, or if it just refers the ineffective argument to the context of a 2255 motion, then the district court judge could consider or require the parties to explore the prejudice aspect. On this record, I would submit to your honors that there was no prejudice. And that- That I get, that he's not made a show of prejudice yet. That I would understand, and that's why my question is a little different, not just has he thus far demonstrated prejudice, but are we at the point where we should be permanently adjudicating that he has not and cannot show prejudice on an effective assistance, and that precludes him from ever revisiting that issue again? I understand your honor's point, and I think that we are, Judge. And the reason is, is that Mr. Jannar-Norsen had four attorneys throughout the litigation of this case. He was not diagnosed with autism. He was charged by criminal complaint in August of 2018, but he was not diagnosed with autism until July of 2019 as part of his defense. The notice of expert was not filed until more than a year later in August of 2020. During that time, at least two attorneys, Attorney Pallotto and then Attorney Sciardi, explored this autism defense. They used his primary care physician, and then Dr. Salamone, and then finally the high school graduate, Mr. Dabowd at the end. There is no reason for the court to assume or to believe that further exploration of prejudice would bear any fruit at the district court level. That's fair, I understand. We understand your argument, thank you very much. Why don't we hear from Attorney Harrington, who's got one minute for rebuttal. Thank you. We'll, again, keep it to one minute. Short people problems. Yeah, I'll just briefly address your last question, Your Honor, and whether or not any decision by this court should preclude a finding of prejudice in a 2255. I would argue that absolutely not. If this court feels that there is insufficient evidence on the record, then it should let the appellant go back to the district court on a 2255. Well, it's not so much that there's insufficient evidence in the record, such that, I mean, we may think, isn't the question more that, the question is whether he's had an opportunity to fully develop the record, and we don't know. Maybe he can add zero to the record. But it's the question, I think, whether he has an opportunity with a new lawyer to figure out whether there's more than zero he can add to the record. But I think, Your Honor's last question to the government was that whether or not this court should make a finding that prejudice can't be established. Right, or just kick it. Right, I would ask that- That we would enter sort of a halfway finding. Right, that if you're going to find that there is no possible prejudice, that you don't make that finding and allow the district court to make that finding because if your honors find that it's not, that the record is not sufficiently fully developed, then I would argue that you also cannot make a finding that there was prejudice. We don't know what some hypothetical expert out there who might hypothetically have been available to the lawyer and who, it was the lawyer's problem not to have found that, not that he was basically called off by the client, if that's out, we don't know if that's out there. I understand, Your Honors. Thank you very much. Thank you both very much, very helpful arguments today. Thank you. And we will take the case under advisement. We'll now